```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
CHANEL, INC., a New York corporation,
                              Plaintiff,                            **REPORT AND RECOMMENDATION**

             - v -                                                  CV 04-4099 (CPS)(VVP)

LEV DOUBININE, et al.,
                              Defendants.
----------------------------------------------------------x
```

This matter was referred by the Honorable Charles P. Sifton to the undersigned to issue a report and recommendation concerning jurisdiction, damages, injunctive relief, attorney's fees and costs to be awarded to the plaintiff as against the defaulting defendants, Dawn Zapote, a/k/a Dawn S. Brumbaugh, an individual d/b/a D.Selene d/b/a Dzapote, d/b/a Celebstyles2 d/b/a Celebstyles2@hotmail.com d/b/a Replicadiscount.org, d/b/a Spoiledandlvit d/b/a Spoiledandlvit@aol.com d/b/a Lv4sale2 d/b/a Mywaytolive@hotmail.com d/b/a Selene Zapote d/b/a Dszapote d/b/a Selene11468 d/b/a Selenezaopte@hotmail.com d/b/a Spoiledandlvit2 d/b/a Spoiledandlvit2@aol.com (hereinafter "Zapote"), and Svetlana K. Child a/k/a Lana Khinkis (hereinafter "Child') and Kira Favelyukis (hereinafter "Favelyukis"), individually and jointly d/b/a Lanamerge d/b/a Lananyc d/b/a Lanamerge@aol.com d/b/a Doryslilfriend d/b/a Doryslilfriend@aol.com d/b/a chanel525@hotmail.com d/b/a Newyorkcouture d/b/a Newyorkcouture@aol.com d/b/a Lancha_777 d/b/a Bklana.[1]  The case involves the defendants' sales of, and conspiracy to sell, counterfeit products bearing the plaintiff Chanel, Inc.'s (hereinafter "Chanel") marks.  *See* Complaint ¶¶ 4-5, 9-13.

---

[1]This matter was originally referred to the undersigned for a Report and Recommendation regarding the default of the defendants Lev Doubinine, Viktor Nimzorov, Beata Reznik, Svetlana Child, Kira Favelyukis and Dawn Zapote.  Subsequently the claims against defendants Doubinine, Nimzorov, and Reznik were otherwise adjudicated.  This matter has now been referred back to the undersigned for a determination as to the remaining defendants Child, Favelyukis, and Zapote.

A.      **JURISDICTION**

The plaintiff has brought this action pursuant to the Lanham Act which provides the federal courts with subject matter jurisdiction over matters involving violations of patents and trademarks.[2]  28 U.S.C.A. § 1338 and 15 U.S.C.A. § 1121.  Pursuant to 28 U.S.C. § 1391 venue is properly established if a defendant resides within the district or a substantial part of the events occurred within the district.  The plaintiff has filed an affidavit of a licensed process server attesting to service of the summons and complaint in this action upon the defendant Child in Brooklyn by affixing copies to the door of Child's residence, and mailing a copy of the same to the defendant's address in accordance with the provisions of section 308 (4) of the New York Civil Practice Law and Rules.  Service upon defendant Favelyukis was accomplished in the same manner.  Such service is authorized by Rule 4(c)(1) of the Federal Rules of Civil Procedure.

Personal jurisdiction over the defendant Zapote, however, is not as readily established.  Zapote is an Ohio domiciliary.  "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process.' "  *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997) (citing *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990)).  As the Lanham Act does not provide for nationwide service of process, "this Court must look to New York's jurisdictional statutes to determine personal jurisdiction."  *Greenlight Capital, Inc. v. GreenLight (Switz.) S.A.*, No. 04 Civ. 3136, 2005 WL 13682, *2, 2005 U.S. Dist. LEXIS 2

---

[2]Although the plaintiff alleges in the complaint various violations of New York law, the plaintiff's application for default and damages is limited to the defendants' violations of the Lanham Act, and therefore the court does not reach the state law claims. See Chanel's Memorandum of Points and Authorities in support of Application for Default and Final Judgment Against Defendants Lev Doubinine, Viktor Nimzorov, Beata Reznik, Svetlana Child, Kira Favelyukis and Dawn Zapote ("Plaintiff's Mem.").

(S.D.N.Y. Jan. 4, 2005) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)).  If the court finds jurisdiction does exist, the court must then determine whether the exercise of jurisdiction under New York law satisfies the federal due process requirements of "fair play and substantial justice." *Burger King Corp., v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

New York law provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a)(1).  A showing that a party is "transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Agency Rent A Car Systems, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996).  Under the statute proof that one transaction occurred in New York is sufficient to invoke jurisdiction, provided that the defendant's activities were purposeful, and that there was a substantial relationship between the transaction and the claim asserted. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198-99, 522 N.E.2d 40, 43 (1988).  There is no minimum threshold of activity required so long as the cause of action arises out of the allegedly infringing activity in New York.  Websites that are of a commercial nature and permit consumers to place orders and e-mail questions can confer personal jurisdiction pursuant to section 302(a)(1). *ISI Brands, Inc., v. KCC International, Inc.,* 458 F.Supp. 2d 81, 86 (*citing Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 565

(S.D.N.Y. 2000) (the website at issue permitted customers in New York to apply for loans on-line, converse on-line with representatives and e-mail questions); *Hsin Ten Enter. USA v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y.2000) (website allows consumers to purchase product, e-mail company representatives and download order form); *Student Advantage, Inc. v. International Student Exchange Cards, Inc.*, No. 00Civ.1971 (AGS), 2000 WL 1290585, *4 (S.D.N.Y. Sept. 13, 2000) (finding transaction of business in New York where out-of-state website permitted New York viewer to purchase products by providing payment and shipping information online)).

The complaint alleges that upon information and belief, Zapote does business within this judicial district. *See* Complaint ¶ 4. The complaint further alleges that Zapote is engaging in the sale of counterfeit products, and along with other named defendants, is working together and conspiring together in the sale of counterfeit products. *Id.* ¶ 5. The plaintiff also asserts that the defendants operate and maintain business operations through various internet sites which advertise and offer for sale counterfeit merchandise to consumers within this district. *Id.* ¶ 22. The plaintiff further claims that the defendant is engaged in substantial business and/or has committed tortious acts within this district. *Id.* Thus, the allegations in the complaint are sufficient to establish that Zapote transacted business in New York, and therefore the court may exercise personal jurisdiction over Zapote.

The plaintiff served Zapote pursuant to CPLR Section 308 (2) at her residence in Kent, Ohio by delivering the summons and complaint to an individual of suitable age and discretion. Such method of service is also authorized by Rule 4 (c)(1) of the Federal Rules of Civil Procedure. Therefore, this court has subject matter jurisdiction over the case, is a proper venue

for the action, and retains personal jurisdiction over the defendants Zapote, Child, and Favelyukis.

### B. ENTRY OF DEFAULT JUDGMENT

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound judicial discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999), *quoting Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993). When deciding whether to enter default the court considers various factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later would be obligated to set aside the default on defendant's motion. *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 *citing* Moore's Federal Practice § 55.20 {2}{b} (3d ed.1999). In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir.1984).

As noted above, the plaintiff properly served the complaint upon the defendants. The defendants have failed to interpose an answer, or otherwise respond to the complaint. Nor have the defendants responded to plaintiff's application for default. The grounds for default are therefore clearly established, and there is no reason for believing the default is based on a good-

faith mistake or technicality. *See Cablevision Systems New York City Corporation v. Leach*, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Finally, based on defendants' inaction, it is unlikely that the court will be compelled at some future date to enter an order vacating the default judgment. Judgment by default should therefore be granted so long as liability and damages are appropriately established respectively against each defendant.

### C. LIABILITY

By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court accepts as true that the plaintiff is the registered owner of various valid registered trademarks (hereinafter "the Chanel Marks") used in connection with the manufacture and distribution of high quality goods. *See* Complaint ¶¶ 23-24, Exh. A. The plaintiff uses the Chanel Marks in selling goods such as wallets, purses, sunglasses, jewelry, earrings, bracelets, necklaces, pendants, clothing, scarves, jackets, coats, shirts, sweaters, hats, and hairties. *Id.* ¶ 23, Exh. A. The Chanel Marks have been used in interstate commerce for an extended period of time to identity and distinguish them as high quality goods. *Id.* ¶ 24.

The court further accepts as fact that the plaintiff never assigned or licensed the Chanel Marks to any of the defendants. *Id.* ¶¶ 25, 36. The allegations of the complaint establish that the defendants are manufacturing, causing to be manufactured, importing, promoting and otherwise selling or offering for sale similar counterfeit products bearing trademarks which are exact

copies of the Chanel Marks. *Id.* ¶ 32. The defendants are using the Chanel Marks in the same fashion on inferior goods. *Id.* ¶¶ 32-33. The pleadings further establish that the counterfeit products were not manufactured by the plaintiff. *Id.* ¶ 34. The defendants operate and maintain business operations through internet action sites and websites which advertise, offer for sale and sell the counterfeit products. *Id.* ¶ 22. The internet sites allow the exchange of information between the defendants and consumers in this district. *Id.* In addition, the consumers who view the defendants' advertisements and purchase their counterfeit merchandise are likely to be deceived and the counterfeit goods will cause confusion. *Id.* ¶¶ 33, 35, 38, 47, 53, 55, 63.

These facts are sufficient to establish the defendants' liability for violation of section 32(1) of the Lanham Act which states that,

> (1) Any person who shall, without the consent of the registrant–
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

The defendants' acts also constitute a violation of section 43(a)(1)(A) of the Lanham Act which holds that in civil actions one may be held liable if,

> (1) Any person who, on or in connection with any goods or services, or any container for goods uses in commerce any word, term, name, symbol, or device, or any combination

thereof, or any false designation of any origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person

15 U.S.C. § 1125(a)(1)(A).

### D. DAMAGES

Having provided notice to the defaulting defendants, the court is able to receive affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered affidavits submitted by the plaintiff, and concludes that they provide a basis for the relief recommended below. The defendants have not made any submissions.

The plaintiff seeks an award of statutory damages. The Lanham Act provides that,

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of–
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)(2).

The court has broad discretion in determining the range of statutory damages. *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1116 (2d Cir.1986). In making a statutory award determination, in addition to willfulness, courts consider such factors as the expenses saved and profits reaped by the defendants, the revenues lost by the plaintiff, and the deterrent effect of the award on other potential infringers. *Id.*, 807 F.2d at 1117; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234, 73 S.Ct. 222, 226, 97 L.Ed. 276 (1952). Statutory damages play a dual role in that they compensate for injury and deter wrongful conduct. *Yurman Design, Inc., v. PAJ, Inc.,* 262 F.3d 101, 113-114 (2d Cir. 2001). Statutory damages are appropriate in instances where it is difficult to determine plaintiff's actual damages. *Van Der Zee v. Greenidge,* No. 03 CV 8659, 2006 WL 44020, at *1 (S.D.N.Y. 2006); *Granada Sales Corp. v. Aumer*, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.,* 866 F. Supp. 780, 782 (S.D.N.Y.1994). However, an award of statutory damages does not entitle the plaintiff to a windfall recovery. *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 677 F. Supp. 740, 769 (S.D.N.Y.1988).

### 1. Svetlana Child and Kira Favelyukis

The plaintiff seeks $206,644.50 in statutory damages against defendants Child and Favelyukis. *See* Plaintiff's Mem. at 14. The plaintiff's calculations in arriving at this figure, however, rest entirely on an estimate of daily sales made by those defendants which is

unsupported by any evidence.  The court should therefore reject the plaintiff's proposal for assessing damages against these defendants.

The defendants' default of course hampers the plaintiff's efforts to estimate their sales and profits because the plaintiff has been unable to obtain discovery from them concerning those matters.  The court is therefore justified in finding a reasonable basis for assessing damages in other evidence the plaintiff has provided in their affidavits.  Between March 2003 and February 2004, an investigator hired by Chanel purchased three sets of earrings bearing Chanel Marks from Child and Favelyukis (hereinafter "the Lanamerge defendants").  *See* Declaration of Rob Holmes in Support of Chanel's Memorandum on Points and Authorities in Support of Application for Default and Final Default Judgment Against Defendants Lev Doubinie, Viktor Nimzorov, Beata Reznik, Svetlana Child, Kira Favelyukis and Dawn Zapote ("Holmes Decl.") ¶ 1.  Holmes *Id.* ¶¶ 4, 7, 9.  The earrings purchased by Holmes were sent to plaintiff's Director of Legal Administration, Andrienne Hahn Sisbarro, for analysis.  *See* Declaration of Andrienne Hahn Sisbarro in Support of Chanel's Memorandum on Points and Authorities in Support of Application for Default and Final Default Judgment Against Defendants Lev Doubinie, Viktor Nimzorov, Beata Reznik, Svetlana Child, Kira Favelyukis and Dawn Zapote ("Sisbarro Decl.") ¶ 1.  Sisbarro's analysis determined that all three pairs of earrings were counterfeit.  *Id.* ¶¶ 11,14, 16, 17.  Sisbarro's office sent the Lanamerge defendants a cease and desist letter following Holmes' first purchase in March 2003.  *Id.* ¶¶ 12-13, Exh. 4.

The plaintiff has thus demonstrated that the Lanamerge defendants had actual knowledge that their actions constituted infringement from and after March 2003.  Nevertheless, they again sold infringing merchandise in February 2004.  It is reasonable to assume that they continued to

offer for sale, and did sell, infringing merchandise during the entire period from March 2003 through September 2004 when this action was filed, a total of 19 months. Assessing statutory damages at a rate of $5,000 per month would yield a total of $95,000, an amount which appears appropriate to achieve the goals of compensation and deterrence that are the aims of the Lanham Act.

### 2. *Dawn Zapote*

The plaintiff's request for statutory damages against the defendant Dawn Zapote in the amount of $1,827,585 likewise rests on an entirely unsubstantiated estimate of her sales and profits, and should therefore be rejected. The evidence submitted by the plaintiff establishes that an investigator first purchased a pair of sunglasses bearing the Chanel Marks from Zapote in or about October 2003. *See* Declaration of Julia Sankey in Support of Chanel's Memorandum of Points and Authorities in Support of Application for Default and Final Default Judgment Against Defendants Lev Doubinie, Viktor Nimzorov, Beata Reznik, Svetlana Child, Kira Favelyukis and Dawn Zapote ("Sankey Decl.") ¶ 4. The sunglasses were being offered for sale through Yahoo.com under the seller name DSZapote and were purchased for $28.99. *Id.* After determining that the sunglasses were counterfeit, the plaintiff sent defendant Zapote a cease and desist letter in November 2003. *See* Sisbaro Decl. ¶ 22. Five months later, however, in April 2004, another investigator hired by the plaintiff purchased two pairs of counterfeit Chanel sunglasses from Zapote, this time through Yahoo websites bearing other seller names used by Zapote, "SpoiledAndLvIt2" and "CelebStyles2." *See* Holmes Decl. ¶¶ 13-19; Sisbarro Decl. ¶¶ 22, 24.

These facts demonstrate that Zapote offered for sale and sold counterfeit merchandise beginning at least in October 2003, and that she thereafter continued to sell counterfeit merchandise despite actual knowledge that she was doing so. It is thus reasonable to assume that, like the Lanamerge defendants, she engaged in infringing activity throughout the period from October 2003 through the filing of this action in September 2004, a period of 12 months. Using the same $5,000 per month figure for assessing statutory damages yields a total of $60,000, an amount which appears sufficient to compensate the plaintiff and deter the defendant Zapote.

### E. INJUNCTIVE RELIEF

The plaintiff also seeks injunctive relief. In order to be granted an injunction the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *King Vision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 507 (E.D.N.Y. 2006). Under the Lanham Act the court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant . . . . " 15 U.S.C.A. § 1116. In a trademark case, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Lobo Enters., Inc. v. Tunnel, Inc.,* 822 F.2d 331, 333 (2d Cir. 1987)(internal quotation marks and citations omitted).

The court has found that the plaintiff has established the defendants' liability for infringement of the Chanel Marks. There is ample evidence in the record to suggest that absent an injunction the defendants will continue to infringe the Chanel Marks resulting in a continued

injury to the plaintiff. The defendants not only ignored plaintiff's cease and desist letters, but continued the infringing activity, and attempted to evade detection by changing user names on the internet as well as switching internet sites to conduct sales. Injunctive relief is also appropriate to curtail the likelihood of confusion caused by the defendants' sale of counterfeit goods. Accordingly, the defendants should be permanently enjoined from purchasing, distributing, selling, or offering for sale, counterfeit Chanel products, and from using plaintiff's Chanel Marks in a confusingly similar manner.

### F.   ATTORNEY'S FEES AND COSTS

The Lanham act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A willful infringement may be considered an exceptional case under the Lanham Act. *See Bambu Sales, Inc. v. Ozak Trading Incorporated*, 58 F.3d 849, 854 (2d Cir.1995).

The Second Circuit has adopted the "lodestar" approach in determining what constitutes a reasonable attorneys' fee. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). "The so-called 'lodestar' figure . . . is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . [with] a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This assessment "should be based on 'prevailing market rates,' for comparable attorneys of comparable skill and standing in the pertinent legal community," *id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), which, here, is the Eastern District of New York, *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 220 (E.D.N.Y. 2004). To aid the court in determining the amount of reasonable attorney's fees, the plaintiff is required to submit evidence that provides a factual basis for a fee award. *Hensley v.*

*Eckerhart,* 461 U.S. at 433-434. In this Circuit, that entails submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work done, for each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The court must then determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 406 U.S. at 896 n.22; *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See New York State Ass'n*, 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, Dkt. No. CV 02-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. August 12, 2005). In addition, the court may exclude hours from the lodestar calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), *citing Hensley,* 461 U.S. at 434, *Luciano*, 109 F.3d at 116.

The plaintiff has submitted two attorney declarations in support of an attorney's fee award of $10,000. *See* Declaration of Stephen Gaffigan ("Gaffigan Decl.") and Declaration of Stanley R. Goodman ("Goodman Decl."). The declarations establish the experience of the attorneys and the hourly rate charged, which the court finds reasonable.[3] The Gaffigan Declaration asserts that he billed plaintiff for twenty-five hours in this matter, and Goodman asserts that hours were discounted in arriving at his $2,000 fee. However, the declarations fail to provide contemporaneous billing records to establish the tasks performed and the hours expended, as required by the Second Circuit. *See Carey*, 711 F.2d at 1147-48. Therefore, the

---

[3]Gaffigan billed at a rate of $310 per hour and Goodman at $300 per hour.

court in its discretion recommends a 50% reduction in the attorney's fees, yielding a total of $5,000. *See generally, e.g.*, *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005) (applying percentage reduction in fees where billing records are inadequate).

Lastly, plaintiff seeks $285 for filing fees and service of process which are properly reimbursable.

In accordance with the above considerations, the undersigned hereby **RECOMMENDS**

1. That a default judgment be entered against the defendants Svetlana Child, Kira Favelyukis and Dawn Zapote;

2. That the plaintiff be awarded statutory damages in the amount of $95,000 against the defendants Svetlana Child and Kara Favelyukis, jointly and severally, and in the amount of $60,000 against the defendant Dawn Zapote;

3. That the defendants be permanently enjoined from purchasing, distributing, selling, or offering for sale, counterfeit Chanel products, and from using plaintiff's Chanel Marks in a confusingly similar manner; and

4. That the plaintiff be awarded attorney's fees and costs of $5,285 against the defendants, jointly and severally.

\*       \*       \*       \*       \*       \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.,*

*Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

       **SO ORDERED:**
       *Viktor V. Pohorelsky*
       VIKTOR V. POHORELSKY
       United States Magistrate Judge

Dated: Brooklyn, New York
       August 28, 2008